**Adam FARKAS, Appellant,**

v.

**TEXAS INSTRUMENT, INC. and Ling-Temco-Vought, Inc., Appellees.**

**No. 23699.**

United States Court of Appeals
Fifth Circuit.

March 31, 1967.

Rehearing Denied May 1, 1967.

---

2. Va.Code Ann. §§ 18–160 & 18–161 (1950), now §§ 18.1–88 & 18.1–89 (Supp.1960).

Adam Farkas, pro se.

Harold Hoffman, of Wynne, Jaffe & Tinsley, Dallas, Tex., for appellee Ling-Temco-Vought, Inc.

Richard E. Gray, Jr., David F. Hunt, William J. Roche, Dallas, Tex., Thompson, Knight, Simmons & Bullion, Dallas, Tex., of counsel, for appellee Texas Instrument, Inc.

Before TUTTLE, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

TUTTLE, Chief Judge:

Appellant, a naturalized citizen of the United States, is a native of Romania. He was employed as an engineer by the defendant Texas Instrument, Inc. from June, 1962 until his discharge in May, 1963. The complaint asserts that the defendants, Texas Instrument, Inc., and Ling-Temco-Vought, Inc., were prime contractors operating under federal government contracts containing certain provisions, required to be included therein by an Executive Order issued by the President, which forbade the defendants from discriminating against any employee or applicant for employment in connection with the performance of their contracts on the basis, inter alia, of national origin. In substance, appellant claims that his discharge from Texas Instrument was motivated by discrimination based upon his national origin, that Ling-Temco-Vought refused to hire him for the same reason, and that the two defendants engaged in a conspiracy to prevent him from securing employment by the use of certain methods described as "blackball" tactics.

Appellant asserts jurisdiction under 28 U.S.C.A. § 1331, the federal question statute, and 28 U.S.C.A. § 1343, providing for jurisdiction of "any civil action authorized by law to be commenced by any person * * * because of the deprivation of any right or privilege of a citizen of the United States by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 * *." The trial judge dismissed the complaint for failure to state a claim within the jurisdiction of the district court. We agree that the complaint must be dismissed, but not for want of jurisdiction.

I

We consider first the claims of discriminatory discharge and refusal to hire.

A. On March 7, 1961, President John F. Kennedy issued Executive Order No. 10925, the pertinent portion of which required all government contracting agencies to include in every government contract the following provision:

Section 301.

\* \* \* \* \* \*

In connection with the performance of work under this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color or natural origin.

Appellant alleges that the defendants have entered into certain government contracts containing the above-quoted provision, and that they have breached that condition of their agreements by discharging and refusing to employ him because of his national origin. Claiming a federal right as a third-party beneficiary under those contracts, he seeks to maintain this action to recover damages which he claims to have suffered by reason of defendants' nonperformance.

Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), teaches that where the complaint is so drawn as to seek recovery directly under the Constitution or laws of the United States, a federal court must entertain the suit,

unless the federal claim is immaterial and made solely for the purpose of obtaining jurisdiction, or wholly insubstantial or frivolous.

The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact, it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. Id. at 682, 66 S.Ct. at 776.

The claim attempted to be asserted here is based upon a right claimed to be conferred by an Executive Order. That Order, in turn, is to be accorded the force and effect given to a statute enacted by Congress.[1] The alleged federal claim is neither immaterial to the relief sought, nor insubstantial. Clearly, then, the complaint "is so drawn as to seek recovery directly under the Constitution or laws of the United States." Accordingly, the district court had jurisdiction under 28 U.S.C.A. § 1331 to decide whether or not the allegations in the complaint state a ground for relief. Bell v. Hood, supra.

B. This brings us to the question whether a private civil action is a permissible method of enforcing the antidiscrimination provisions of Executive Order No. 10925. This question was considered in Farmer v. Philadelphia Electric Co., 329 F.2d 3 (3rd Cir. 1964). Excerpts from that court's analysis of the question are set out in the margin.[2]

---

1. Congress has committed to the President broad authority to "prescribe such policies and directions, not inconsistent with the provisions of this chapter (Chapter 10 of Title 40, which deals with the procurement, utilization and management of Government property) * * *. (and) chapter 4 of Title 41 (which concerns the procurement of property and services for the government by uniform procedures) * * * as he shall deem necessary to effectuate the provisions of said chapters * * *." 40 U.S.C.A. § 486(a). We would be hesitant to say that the antidiscrimination provisions of Executive Order No. 10925 are so unrelated to the establishment of "an economical and efficient system for * *. * the procurement and supply" of property and services, 40 U.S.C.A. § 471, that the order should be treated as issued without statutory authority. Indeed, appellees make no such challenge to its validity. We, therefore, conclude that Executive Order No. 10925 was issued pursuant to statutory authority, and has the force and effect of law. Accord, Farmer v. Philadelphia Electric Co., 329 F.2d 3 (3rd Cir. 1964).

2. The history of the executive orders on the subject from 1951 to the present all point to the conclusion that the enforcement of the nondiscrimination provisions in Government contracts has been entrusted to one or more of the Governmental agencies with the assistance of a committee appointed by the President. The only provisions of any order mentioning court proceedings are paragraphs (b) and (c) of § 312 dealing with sanctions and penalties in Executive Order 10925. These paragraphs provide that the contracting agency or the Committee recommend to the Department of Justice that appropriate proceedings "within the limitations of applicable law" be brought against noncomplying contractors and that criminal proceedings be brought against those furnishing false information to a contracting agency or to the Committee. Paragraph (f) of § 312 of the Order states:

"(f) Under rules and regulations prescribed by the committee, each contracting agency shall make reasonable efforts within a reasonable time limitation to secure compliance with the con-

We agree with the conclusion there reached that:

The history of the orders, the rules and regulations made pursuant to them, and the actual practice in the enforcement of the nondiscrimination provisions are all strong persuasive evidence * * * that the threat of a private civil action was not contemplated by the orders. 329 F.2d at 9.

■ Were there an absence of any remedy save that which might be fashioned under the general jurisdiction of the federal courts, the inference would be strong that that jurisdiction was intended to be invoked to give vitality to the contractual assurances of nondiscrimination given pursuant to the Order. But this is not the case. The path was open to appellant under the Order to lay his complaint before the President's Committee on Equal Employment Opportunity. 41 C.F.R. §§ 60.1.20–27. He alleges that he has availed himself of this opportunity, but that the Committee refused him relief. In light of the Order's emphasis on administrative methods of obtaining compliance with the required contractual provisions, and its narrowly limited reference to judicial enforcement thereof, we conclude that that refusal is final. See Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Accordingly, the claims predicated upon breach of contractual nondiscrimination provisions must be dismissed on the merits for failure to state a cause of action upon which relief can be granted.[3]

tract provisions of this order *by methods of conference, conciliation, mediation, and persuasion* before proceedings shall be instituted under paragraph (b) of this section, or before a contract shall be terminated in whole or in part under paragraph (d) of this section for failure of a contractor or subcontractor to comply with the contract provisions of this order."

Section 307 of this Order in pertinent part provides:

"Each contracting agency shall be primarily responsible for obtaining compliance with the rules, regulations and orders of the Committee with respect to contracts entered into by such agency * * *. All contracting agencies shall comply with the Committee's rules in discharging their primary responsibility for securing compliance with the provisions of contracts and otherwise with the terms of this Executive order and of the rules, regulations and orders of the Committee pursuant hereto. * * * They are further directed to appoint or designate * * * compliance officers. It shall be the duty of such officers to seek compliance with the objectives of this order *by conference, conciliation, mediation, or persuasion.*"

The regulations of the President's Committee on Equal Employment Opportunity, issued under Executive Order 10925, 26 F.R. 6585 (July 1961), 41 CFR, § 60-1.24 (b) (2), state in part:

"If the investigation (made by the contracting agency) indicates the existence of an apparent violation of the nondiscrimination provisions, the matter should be resolved by informal means whenever possible."

When informal means are unsuccessful, 41 CFR, § 60-1.24 (b) (3) provides that the appropriate sanction or penalty may be imposed. However, the intention of the Committee to maintain control over the imposition of such sanctions and penalties is shown by the provision that

"The contracting agency shall not impose any sanction or penalty under Section 312 of the Order, except under subsection (d) of that section relating to contract termination, without prior approval of the Committee * * *."

Further, § 60-1.29 of 41 CFR provides that no case shall be referred to the Department of Justice for legal action without ten days' notice to the contractor "affording him an opportunity to comply with the provisions of the Order * * *.", and that

"In addition, the contracting agency shall make reasonable efforts to persuade the contractor to comply with the Order and to take such corrective action as may be appropriate."

As far as we have been able to ascertain, the Department of Justice has not instituted any proceeding in any court against any noncomplying contractor to enforce the nondiscrimination provisions of a Government contract.

Farmer v. Philadelphia Electric Co., 329 F.2d 3, 8–9 (3rd Cir. 1964).

3. With the passage of the Civil Rights Act of 1964, discrimination with regard to hire or tenure of employment based upon race, color, religion, sex or national origin by any employer engaged in an industry

## II

We turn now to the claimed conspiracy. The complaint alleges that "at various times subsequent to his discharge by Defendant Texas Instrument, Inc., said Defendant knowingly, intentionally and unlawfully combined with other persons, firms and corporations to deprive the Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws and his rights as a citizen of the United States by preventing the Plaintiff from obtaining and securing employment, and in causing the Plaintiff to be pressured, threatened, harassed and intimidated by local law enforcement officers who were caused to follow the Plaintiff about and subject him to unreasonable and unwarranted surveillance and interrogation, all under the color of state law and authority, and injuring the Plaintiff in person and property for lawfully attempting to enforce his rights to the equal protection of the laws." Appellant's contention is that by these actions, the defendants have violated 42 U.S.C. §§ 1985(2) and (3).

█ Original jurisdiction over actions brought to recover damages resulting from such violations is committed to the district courts by 28 U.S.C. § 1343. Clearly, appellant has *attempted* to state a right based on Sections 1343 and 1985. His federal claim is neither immaterial to the relief sought nor, in our judgment, wholly insubstantial. Thus, under Bell v. Hood, supra, the district court had jurisdiction to determine the question whether the allegations of conspiracy in appellant's complaint stated a federally-granted cause of action. Congress of Racial Equality v. Clemmons, 323 F.2d 54 (5th Cir. 1963).

█ On the merits, the difficulty with appellant's claim is that it nowhere contains the essential allegations of state action. As we said in *Clemmons*, supra, "It is still the law that the Fourteenth Amendment and the statutes enacted pursuant to it, including 42 U.S.C.A., § 1985, apply only where there is state action." Id. at 62.

█ Appellant does allege that the defendants furnished false information to local and federal authorities (including the federal officer sent to investigate the complaint filed by appellant pursuant to Executive Order No. 10925), and that they caused local law enforcement officers to "subject him to unwarranted and unreasonable surveillance and interrogation."

In one sense, of course, these allegations do show involvement by officials "acting under color of state law." But these alleged activities are not the sort of "state action" with which § 1985 is concerned. Appellant alleges that local law enforcement officers were caused to subject him to unreasonable and unwarranted surveillance and interrogation, but he does not allege that the persons *responsible* for this alleged invasion of his rights were acting under color of state law. In fact, he alleges that the defendants, both private corporations, caused these actions to be taken. As we said in Dinwiddie v. Brown, 230 F.2d 465 (5th Cir. 1956):

"This is not to deny that if state officers conspire with private individuals in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law. *It is another matter, however, where they act wholly within their official responsibilities and do not intentionally cooperate in any fraudulent scheme.* In such a case, the tort is solely that of the private individuals, and redress

---

affecting commerce was made an unlawful employment practice. Sec. 703 (a) (1), 42 U.S.C.A. § 2000e–2(a) (1). Under the Act, initial responsibility for the elimination of such practices is committed to the Equal Employment Opportunity Commission. However, if the Commission is unable to obtain voluntary compliance with the provisions of the Act within a brief period after a charge is filed with it (30 days in most cases), any person claiming to be aggrieved by the unlawful employment practice may institute a civil action for enforcement in the United States District Court. Sec. 706 (e), 42 U.S.C.A. § 2000e–5(e).

of the wrong rests with the state courts." Id. at 469. (Emphasis added.)

The allegations of conspiracy, then, do not state a cause of action upon which relief can be granted, and the complaint should therefore have been dismissed for that reason.

For the reasons stated, the judgment of dismissal is

Affirmed.