**Williams LEWIS et al., Plaintiffs,**

v.

**WESTERN AIRLINES, INC., et al., Defendants.**

No. C–72–2020.

United States District Court, N. D. California.

July 9, 1974.

Howard Moore, Jr., Berkeley, Cal., Hansen, Jaffe & Weiss, San Francisco, Cal., Amanda Hawes, Marjorie Gelb, Janice E. Cooper, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs.

Edwin L. Currey, Jr. and Gilmore F. Diekmann, Jr. of Bronson, Bronson & McKinnon, James L. Browning, Jr. and John F. Cooney, Jr., U. S. Atty's Office, San Francisco, Cal., for defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT AND TO DISMISS THIRD COUNT OF COMPLAINT

WOLLENBERG, District Judge.

Plaintiffs seek to maintain this action for employment discrimination against Western Airlines and several employees of the federal government charged with ensuring compliance by Western Air-

lines with federal anti-discrimination laws. The complaint alleges causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Executive Order 11246, as amended, 3 C.F.R. 169 (1974), 28 U.S.C. § 1361, plus 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Defendant Western Airlines moves for a more definite statement, F.R.Civ.P. Rule 12(e), and to dismiss the third claim for relief, which alleges a cause of action under Executive Order 11246.

## More Definite Statement

■ Plaintiffs' allegation in Paragraph 50 of the complaint, that they have exhausted all available administrative remedies with respect to the third claim for relief, is sufficient to enable Defendants to file responsive pleadings. This is all that is required by F.R.Civ.P.

Rule 12(e), E.E.O.C. v. Bartenders International Union AFL–CIO, 369 F.Supp. 827 (N.D.Cal. June 22, 1973); E.E.O.C. v. Pick Memphis Corp., 5 E.P.D. ¶8471 (W.D.Tenn.1973), and, accordingly, the motion for a more definite statement will be denied.

## Dismiss Third Claim for Relief

■ Whether Plaintiffs may maintain a private cause of action under Executive Order 11246 has not been considered by the Court of Appeals of this Circuit. The regulatory scheme of the Executive Order essentially prohibits employers holding government contracts from engaging in unlawful employment discrimination and requires them to adopt and implement affirmative action programs calculated to eliminate whatever vestiges of employment discrimination may remain in their operations.[1]

---

1. Following is a summary of the terms and procedures for enforcement of the Executive Order established by the President and by the Secretary of Labor pursuant to Section 201 of the Executive Order, 3 C.F.R. 169, 170 (1974). The text of the Executive Order is found at 3 C.F.R. 169 (1974), and the Regulations appear at 41 C.F.R. § 60–1.1 et seq. (1973).

Executive Order 11246 seeks to ensure that employers holding government contracts hire their employees without regard to race, color, religion, sex or national origin. 41 C.F.R. § 60–1.1 (1973). To implement this goal, the Executive Order incorporates into every government contract, except those exempted by Section 204 of the Executive Order, 3 C.F.R. 169, 172 (1974) and 41 C.F.R. § 60–1.5 (1973), as a matter of law the equal opportunity clause set out in Section 202 of the Executive Order, 3 C.F.R. 169, 170–71 (1974); see 41 C.F.R. § 60–1.4(a) and (b) (1973). The equal opportunity clause prohibits discrimination in hiring and and in the conditions of employment and requires employers to take affirmative action to ensure that their operations are free from the effects of the proscribed discrimination. The purpose, scope and content of the required affirmative action programs are set out in detail in Revised Order No. 4 issued by the Secretary of the Department of Labor. 41 C.F.R. § 60–2.1 et seq. (1973). The Executive Order and the Regulations provide certain sanctions and, to some extent, attempt to prescribe the procedure for imposing these sanctions when em-

ployers fail to comply with the equal opportunity clause.

The Executive Order assigns to the Secretary of Labor responsibility for ensuring compliance with the equal opportunity clause, Section 203 of the Executive Order, 3 C.F.R. 169, 170 (1974), and the Secretary of Labor delegated this function to the Director of the Office of Federal Contracts Compliance, (hereinafter "the Director") who remains under the Secretary's supervision. 41 C.F.R. § 60–1.2 (1973). The Director designates various agencies in the executive department of the federal government as "Compliance Agencies" and supervises their work. These Compliance Agencies are charged with ensuring compliance with the equal opportunity clause. 41 C.F.R. § 60–1.3(d) (1973).

Under the Executive Order and the Regulations, there are two procedures for detecting violations of the equal opportunity clause, and these share a common set of sanctions which may be imposed. See Sections 206(a) and (b) of the Executive Order, 3 C.F.R. 169, 172–73 (1974), and the Regulations at 41 C.F.R. §§ 60–1.20 and 60–1.21 (1973). The Regulations require compliance reviews of employers to be made regularly by the Compliance Agencies or by the Director to ensure that the equal opportunity clause is being implemented. 41 C.F.R. § 60–1.20(c) (1973). An employee or prospective employee who suspects an employer is violating the equal employment clause of its contract may file a complaint with the appropriate agency or with the

It was recently held in Legal Aid Society of Alameda County v. Brennan, 381 F.Supp. 125 (N.D.Cal. filed June 20, 1974), that Executive Order 11246 may be the basis of a private action seeking an order that the appropriate agency of the federal government enforce the provisions of the Executive Order and of regulations issued pursuant to it (hereinafter "Regulations"). The present case presents the different question whether such an action may be brought directly against the contractor believed to be in violation of the Executive Order.

In Farkas v. Texas Instrument, Inc., 375 F.2d 629 (5th Cir. 1967), frequently cited as authority for denying a cause of action under the Executive Order, the Court concluded that the history and text of Executive Order 10925, a predecessor of Executive Order 11246, suggest that no private right of enforcement through a civil action was contemplated by its enactment. The Court's position in *Farkas* was that certain administrative remedies were provided by Executive Order 10925 and by regulations issued pursuant to it, that these remedies were intended to be exclusive, and that once they were exhausted, the aggrieved person was without further recourse. 375 F.2d at 633. The Court cited as authority Farmer v. Philadel-phia Electric Co., 329 F.2d 3 (3d Cir. 1964), and Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

In *Farmer*, the court presented at length its view that Executive Order 10925 does not create a private right of action for its enforcement. The court concluded, however, that, having failed to exhaust the administrative remedies provided by the Executive Order, plaintiff was therefore barred from maintaining the action: "[W]hether a district court could then [after administrative remedies were exhausted] entertain jurisdiction is not here decided". 329 F.2d at 10. The question of a private right of action, posed by the present lawsuit, was therefore expressly reserved by the court in *Farmer*. *Switchmen's Union* will be discussed, *infra*.

The Supreme Court has held that "[a]ll constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced. [citation omitted.] In such a case the specification of one remedy normally excludes another. [citations omitted.]" Switchmen's Union v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61 (1943). Because of the "narrowly limited reference to judicial enforcement" contained in the terms of the Executive Order,[2] the Fifth Cir-

---

Director, and this complaint must be promptly investigated. 41 C.F.R. §§ 60–1.21 to 60–1.24(b) (1973). When, as a result of either a compliance review pursuant to 41 C.F.R. § 60–1.20 (1973) or pursuant to the investigation of a complaint made pursuant to 41 C.F.R. §§ 60–1.21 to 60–1.23 (1973), it is determined that an employer is violating the equal opportunity clause of his contract, the Director may act directly or authorize the appropriate agency to cancel, terminate or suspend the employer's government contracts, to bar the employer from receiving further contracts, or to "impose such other sanctions as are authorized by the order." 41 C.F.R. § 60–1.24(c)(3) (1973). The term "other sanctions" refers specifically to Sections 209(a)(2) and (a)(3) of the Executive Order, 3 C.F.R. 169, 173–74 (1974), which authorize the Secretary of Labor, who, pursuant to 41 C.F.R. § 60–1.27 (1973), has authorized the Director, to

(2) Recommend to the Department of Justice that, in cases in which there is substantial or material violation of the [equal opportunity clause], appropriate proceedings be brought to enforce [that clause], including the enjoining, within the limitations of applicable law, of organizations, individuals, or groups who prevent directly or indirectly . . . compliance with the provisions of this Order.

(3) Recommend to the Equal Employment Opportunity Commission or the Department of Justice that appropriate proceedings be instituted under Title VII of the Civil Rights Act of 1964.

No such action may be taken unless the employer under investigation has been afforded the opportunity for a hearing pursuant to 41 C.F.R. § 60–1.26 (1973). 41 C.F.R. § 60–1.24(c)(3) (1973).

2. Sections 209(a)(2) and (a)(3), 3 C.F.R. 169, 173–74 (1974).

cuit, citing *Switchmen's Union, supra,* refused to recognize a private cause of action under the Executive Order. Farkas v. Texas Instrument, *supra.* Both *Switchmen's Union* and *Farkas,* though, were decided before Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

Data Processing Service v. Camp, *supra,* and Barlow v. Collins, *supra,* hold that an individual may bring a civil action to enforce or challenge a federal regulatory statute or regulation, even if the statute or regulation do not specifically confer such a right of action, provided the individual can show he has a personal interest in the outcome of the litigation which is within the zone of interests sought to be protected by the statute or regulation in question. In *Data Processing Service* and in *Barlow* the administrative actions under review challenged agency action and named a representative of the federal agency as a defendant. The same is true of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), on which Plaintiffs here also rely. In Euresti v. Stenner, 458 F.2d 1115 (10th Cir. 1972), however, plaintiff brought a class action against a hospital administrator to force a hospital that was receiving federal funds pursuant to the Hill-Burton Act, 42 U.S.C. § 291 et seq., to comply with the terms of the Act requiring a reasonable portion of the services of a hospital receiving federal funds to be made available to indigent persons. Citing Barlow v. Collins, *supra,* Justice Clark, sitting by designation and writing for the Tenth Circuit, held that plaintiffs had standing to maintain a private action to enforce the Hill-Burton Act, which does not expressly provide for such an action, because the hospital was operating under a contract "explicitly incorporating the federal statutory obligation" and because the plaintiffs were within the zone of interests intended to be protected by the statute and were directly affected by its violation.

458 F.2d at 1118–1119. Executive Order 11246 and the Regulations expressly incorporate as a matter of law into the government's contracts with Defendant Western Airlines the equal opportunity clause mandated by the Executive Order. 3 C.F.R. 169, 170–71 (1974); 41 C.F.R. §§ 60–1.4(a) and (b) (1973). The Executive Order is specific regarding sanctions which may be imposed on employers failing to comply with the provisions of the equal opportunity clause. Section 209(a) of the Executive Order, 3 C.F.R. 169, 173–74 (1974).

Defendant's reliance on *Switchmen's Union* and on the more recent Court of Appeals cases which have likewise relied upon *Switchmen's Union* is misplaced. Plaintiffs in *Switchmen's Union* sought judicial review of the decision by the National Mediation Board that the Brotherhood of Railroad Trainmen would represent the yardmen employed by certain railroads. In deciding whether judicial review of an administrative decision is available when it is not expressly provided by the statute in question, the Court stated that the nature of the problem and the history of the relevant statute are of great importance. 320 U.S. at 301, 64 S.Ct. 95. Proceeding to consider the nature of the problem and the history of the statute, the Court found that in fashioning the procedures for determining which labor union would be the bargaining representative for a group of the workers, Congress was faced with a highly delicate and controversial problem, one which if not resolved with every appearance of care and judiciousness each time it arose could impair the National Mediation Board's ability to carry out its other obligations. 320 U.S. at 302–303, 64 S.Ct. 95. Having come this far, the Court concluded:

> Where Congress took such great pains to protect the Mediation Board in its handling of an explosive problem, we cannot help but believe that if Congress had desired to implicate the federal judiciary and to place on the federal courts the burden of having the

final say on any aspect of the problem, it would have made its desire plain.

320 U.S. at 303, 64 S.Ct. at 98.

The situations in Euresti v. Stenner, *supra*, and the present case are clearly distinct from that in *Switchmen's Union*. The necessity on which the Court rested its decision in *Switchmen's Union* is absent in the present case. In *Switchmen's Union* the Court examined the language and history of the statute in question and was able to conclude that Congress intended the administrative remedy it fashioned so carefully to be exclusive. 320 U.S. at 305, 64 S.Ct. 95. Unlike in *Switchmen's Union*, there is here no delicate situation which will jeopardize other important national policies if not handled in precisely the manner provided in the Secretary of Labor's Regulations. In promulgating the Executive Order and Regulations, the President and Secretary of Labor were not confronted by an "explosive problem" which could cause even greater problems if not handled in a particular way. Even the Regulations, however, do not contemplate that their approach to the problem of employment must be exclusive.[3] On the contrary, in their determination to eliminate employment discrimination, which itself is responsible for great social problems, Congress, the President, and many states have provided numerous remedies, usually with the provisions that they are not meant to repeal whatever other remedies might exist. *See, for example,* 42 U.S.C. § 2000e–7; Boudreaux v. Baton Rouge Marine Contracting Company, 437 F.2d 1011, 1016–1017 (5th Cir. 1971).

Implying a private right of action from a statute or Executive Order should not become a device to undercut effective administrative remedies established by Congress or pursuant to an Executive Order. To maintain a cause of action against Defendant Western Airlines, Plaintiffs will have to show, as they have pleaded, that they have exhausted whatever administrative remedies were reasonably available. The only relief Plaintiffs seek directly under the Executive Order[4] is an injunction compelling the Secretary of Labor, the Director of the Office of Federal Contracts Compliance, and the Federal Aviation Administration to comply with their mandate under the Executive Order and the Regulations. A writ of mandate is available to provide this relief. Legal Aid Society of Alameda County v. Brennan, *supra.* Because Western Airlines' interests are integrally involved in this proceeding and would be substantially affected by the relief Plaintiffs seek under the Executive Order, it is a proper party to this action. F.R.Civ.P. Rule 19(a)(2).[5]

*Switchmen's Union* being inapposite here, this Court having concluded that the principles announced in *Data Processing Service* and *Barlow* and applied in Euresti v. Stenner should control, and Western Airlines' interests being basic to this lawsuit, it is proper that Defendant Western Airlines be a party in this lawsuit. Accordingly, Defendant's motion to dismiss the third claim for relief is hereby denied.

3. "The rights and remedies of the Government hereunder are not exclusive and do not affect rights and remedies provided elsewhere by law, regulation, or contract . . . ." 41 C.F.R. § 60–1.1 (1973).

4. Other relief sought is available under Title VII of the Civil Rights Act of 1964, *supra,* and other statutes.

5. Rule 19(a) of the Federal Rules of Civil Procedure provides in part

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . . If he has not been so joined, the court shall order that he be made a party.