**Mary TRAYLOR et al., Plaintiffs,**

v.

**SAFEWAY STORES, INC. et al., Defendants.**

**No. C–74–2575–CBR.**

United States District Court, N. D. California.

Oct. 16, 1975.

---

Roger A. Clay, Jr., Eric Gold, Henry S. Hewitt, Legal Aid Society of Alameda County, Oakland, Cal., Kelley Ann Burg, George Todd Withy, Burg, Fassler, Gould & Withy, Edward H. Lyman, Ballachey, Meade, Duane & Lyman, Berkeley, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, William L. Diedrich, Jr., Joe C. Creason, Jr., Diane W. Savage, San Francisco, Cal., for defendant Safeway Stores, Inc.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for federal defendants.

Barry S. Jellison, Davis, Cowell & Bowe, San Francisco, Cal., Carl Taylor, Gen. Counsel, George Murphy, Associate Gen. Counsel, Retail Clerks International Association, Washington, D. C., for defendant Retail Clerks' International Association, AFL–CIO, and Retail Clerks' Union, Local 870, AFL–CIO.

Thornton Carlisle Bunch, Jr., San Francisco, Cal., for defendant Retail Clerks Union, Local 1179, AFL–CIO.

## MEMORANDUM OF OPINION

RENFREW, District Judge

Plaintiffs, five individuals, filed this class action against Safeway Stores, Inc. ("Safeway"); Retail Clerks' International Association, Retail Clerks' Union, Local 870, AFL–CIO; Retail Clerks' Union, Local 1179, AFL–CIO; and four officials of the federal government alleging *inter alia* [1] that Safeway has vio-

---

1. Plaintiffs also sought relief against Safeway and the other defendants on the basis that certain actions of the defendants violated rights secured to plaintiffs under the Labor Management Relations Act, 29 U.S.C. § 151 *et seq.*, the Fifth Amendment, Title VII of the Civil

lated Executive Orders 11246 and 11375 [2] by failing to adopt and implement a written affirmative action program which complies with the requirements of those Executive Orders and applicable regulations promulgated thereunder, including Revised Order No. 4, 41 C.F.R. § 60–2.1. With respect to this claim, plaintiffs invoke jurisdiction pursuant to 28 U.S.C. § 1331. Defendant Safeway filed a motion pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure seeking, *inter alia*, partial summary judgment [3] with respect to plaintiffs' claims under Executive Order 11246 on the grounds that no private right of action is available under that order and also that plaintiffs failed to exhaust administrative avenues available under the Executive Orders.

Plaintiffs allege that Safeway is a non-exempt federal contractor within the meaning of Executive Order 11246 and Revised Order No. 4, 41 C.F.R. § 60–2, in that it is a party to federal contracts in excess of fifty thousand dollars and has a work force of more than fifty employees. The complaint states that Safeway has pursued and continues to pursue a policy and practice of discriminating on the basis of race, color, national origin, and sex with respect to employment opportunities. Plaintiffs allege that Safeway has a severe underutilization of minorities and women in its work force and that Safeway has failed to adopt and implement a written affirmative action program that complies with the requirements of Executive Order 11246 and applicable regulations, including Revised Order No. 4, 41 C.F.R. § 60–2.[4]

Plaintiffs contend that they are entitled to bring a private right of action to remedy the injury that they claim to have suffered as a result of defendant's alleged failure to comply with the requirements of the executive order. Defendant argues that a private right of action is not available under Executive Order 11246. The basic issue before the Court on this motion is the resolution of that disagreement. The parties have submitted extensive briefs in support of their respective positions. Because of the Court's disposition of this matter, it has been unnecessary to reach some of the questions raised and discussed by the parties.[5]

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. In two earlier orders, dated May 6 and May 14, 1975, the Court disposed of a variety of issues relating to those claims and took under submission the issue which the Court resolves in this order.

2. Executive Order 11375 amended Executive Order 11246 so that the equal employment opportunity programs provided for in the latter order expressly embraced discrimination on the basis of sex. Hereafter when the Court refers to Executive Order 11246, it means Executive Order 11246 as amended by Executive Order 11375.

3. Although Safeway's motion seeks partial summary judgment, it more properly should have been a motion to dismiss for failure to state a claim upon which relief may be granted, and it is so treated by the Court.

4. Executive Order 11246 requires all government contracting agencies to include certain nondiscrimination and affirmative action provisions in all government contracts. These provisions require the contractor to agree both not to discriminate against any employee or applicant for employment on the basis of race, color, religion, sex, or national origin and also to take affirmative action to ensure that the selection and treatment of employees is not based on those impermissible factors. Executive Order 11246, § 202, 3 C.F.R. 170. Additionally, Revised Order No. 4, promulgated under authority of Executive Order 11246 establishes specific requirements with respect to affirmative action programs which are applicable to certain government contractors. 41 C.F.R. § 60–2.1 *et seq.*

5. At the request of the Court, the parties have in their briefs addressed the question of the significance, if any, of the fact that Executive Order 11246 imposes no direct obligations on members of the private sector. Rather, as indicated above, it operates indirectly by ordering government contracting agencies to require prospective government contractors to undertake the contractual obligations described above as a condition to receiving government contracts. The Court has concluded that this distinction is irrelevant to the question of whether a private cause of

In their initial brief, plaintiffs contended that the inclusion of the words "or as otherwise provided by law" in Section 202(b), which specifies the sanctions to be imposed in the event of a contractor's noncompliance with the nondiscrimination and affirmative action clauses of his contract, evidenced a Congressional intention to create an *express* private right of action. Plaintiffs have not pursued this argument with any vigor, and the Court finds it unconvincing.[6] The question for decision is, therefore, whether a private right of action should be *implied* under Executive Order 11246. The Court concludes that on the basis of existing authority and sound public policy such a right of action should not be implied.

There has apparently been no appellate consideration of the question of whether a private right of action is available under Executive Order 11246. However, there was appellate consideration of the same issue with regard to Executive Order 10925, the predecessor provision to Executive Order 11246 which was similar to the present order in all relevant respects.[7] In both *Farmer v. Philadelphia Electric Co.*, 329 F.2d 3 (3 Cir. 1964), and *Farkas v. Texas Instrument, Inc.*, 375 F.2d 629 (5 Cir.), *cert. denied*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967), the plaintiff attempted to recover as a third party beneficiary of the promise of nondiscrimination made by a contractor to the United States. In both cases the courts concluded that although the executive order had the force and effect of law, the order did not create an express private right of action and the implication of such a right of action was improper. The *Farmer* court stated that "it seems to us, that court action as a remedy was to be used only as a last resort, and that the threat of a private civil action to deter contractors from failing to comply with the provisions was not contemplated by the orders." 329 F.2d at 9. The court ultimately based its decision on an exhaustion-of-remedies rationale, leaving open the question of whether a private right of action might be appropriate if all administrative avenues had been taken. 329 F.2d at 10. After citing *Farmer*, the *Farkas* court went even further, holding that "[i]n light of the Order's emphasis on administrative methods of obtaining compli-

action should be implied. At some point the delegation by Congress to the President to impose obligations directly on members of the private sector might raise constitutional problems concerning the separation of powers, but that is not the situation here.

6. Section 202 incorporates certain provisions into all nonexempt government contracts for goods and services. Subsection 6 of Section 202 provides: "In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, *or as otherwise provided by law*." 3 C.F.R. 170–171 (emphasis added). That language, however, refers to other applicable laws (such as Title VII of the Civil Rights Act of 1964) or to common law remedies available to the government as a result of a breach of the nondiscrimination provisions of the contract. To base the existence of a private right of action on that language would be a classic example of bootstrapping.

If the President had attempted to create an express cause of action under the executive order, the question would arise as to whether the Congressional authority for the executive order, 40 U.S.C. § 486(a), delegated to the President the discretion to create such a right of action. In the event that Congress had delegated such discretion, a serious constitutional question would be presented concerning an unlawful delegation of powers in violation of the separation of powers doctrine. Because the Court has concluded that the President did not attempt to create an express right of action under Execution Order 11246, this question is not presented here.

7. A brief history of the executive orders concerning nondiscrimination by federal government contractors is set out in *Legal Aid Society of Alameda County v. Brennan*, 381 F.Supp. 125, 127 n. 1 (N.D.Cal.1974).

ancé with the required contractual provisions, and its narrowly limited reference to judicial enforcement" (375 F.2d at 633), no private right of action should be allowed even if the administrative alternatives had been exhausted. In both cases the courts were obviously concerned about the impact of private rights of action on the hierarchy of procedures established by the executive order and the regulations under it. The Court finds the *Farkas* decision highly persuasive with regard to the decision in the instant case, but cases subsequent to *Farkas* must be examined to determine if they mandate a different conclusion.

■■■ The Supreme Court has recently handed down two decisions establishing a basic framework of principles for determining whether a private right of action should be implied under a statute which does not expressly provide for one. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), are, in the view of this Court, consistent with the refusal of the *Farkas* court, *supra,* to imply a private right of action under an executive order such as the one at issue here. Under those cases, the requirements for the implication of a private cause of action are, *inter alia,* that the plaintiff be a member of the class for whose especial benefit the statute was enacted; that the court deciding the question take account of any indication of legislative intent, explicit or implicit, regarding the existence of a private right of action; and that implication of such a right of action be consistent with the achievement of the underlying purpose of the statute.[8] *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. 2080, 45 L.Ed.2d 26; *Securities Investor Protection Corp. v. Barbour, supra,* 421 U.S. at 418–425, 95 S.Ct. 1733, 44 L.Ed.2d 263. See also *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 457–458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Implicit in the third requirement is the further requirement that the private right of action not disrupt the administrative scheme established by statute or, as in this case, executive order and related regulations. The implication of a private right of action under Executive Order 11246 would be disruptive of the administrative scheme established by the order and the regulations under it and, therefore, defendant's motion for partial summary judgment must be granted.

Executive Order 11246 establishes a plethora of administrative procedures and remedies. See Executive Orders 11246 and 11375, §§ 205–212, 3 C.F.R. 172–175.[9] The Director of the Office of Federal Contract Compliance ("OFCC") can investigate employment practices of any government contractor (Executive Order No. 11246, § 206(a), 3 C.F.R. 172–173) and can receive and investigate complaints by employees or prospective employees (Executive Order No. 11246, § 206(b), 3 C.F.R. 173). Where there is a substantial or material violation of the antidiscrimination and affirmative action provisions, the Director of OFCC can recommend to the Department of Justice that appropriate proceedings be brought to enforce those provisions including the seeking of injunctive relief (Executive Order No. 11246, § 209(a) (2), 3 C.F.R. 173–174) and can recommend to the EEOC that appropriate proceedings be instituted under Title VII

---

8. In *Cort v. Ash* the court set forth a fourth factor: Is the cause of action one in an area basically the concern of the States, so that it would be inappropriate to imply a cause *of action based solely on federal law.* 422 U.S. at 78, 95 S.Ct. 2080, 45 L.Ed.2d 26. This factor, however, is not applicable to the facts of the instant case.

9. The Secretary of Labor has delegated his authority and responsibilities under the executive orders to the Director of the OFCC with certain limited exceptions. 41 C.F.R. § 60–1.2.

(Executive Order No. 11246, § 209(a) (3), 3 C.F.R. 174). Additionally, the Director can cancel, terminate, or suspend any contract for failure of the contractor to comply with the nondiscrimination provisions and can blacklist noncomplying contractors under certain circumstances (Executive Order No. 12246 § 209(a)(5) and (6), 3 C.F.R. 174). However, before these various actions are initiated, the federal contracting agency must make reasonable efforts to secure compliance by means of conference, conciliation, mediation, and persuasion (Executive Order No. 11246, § 209 (b), 3 C.F.R. 174). It is only after exhausting administrative efforts to obtain compliance that the OFCC can seek to secure compliance through the courts. It would be obviously destructive of the administrative scheme to allow it to be short-circuited by implying a private right of action in favor of individuals who feel that they have been injured through noncompliance with Executive Order 11246. The Court agrees with the *Farkas* court that the remedies and sanctions provided under the administrative scheme need not be supplemented by private rights of action. The Court further notes that the numbers of potential claims involved here are astronomical. The Department of Agriculture alone has more than 18,000 contractors assigned to it for supervision. Fourteen other federal agencies have also been designated as "compliance agencies". *Legal Aid Society of Alameda v. Brennan*, 381 F.Supp. 125, 128 n. 4, 133. The existence of a private cause of action under the executive order would vastly complicate the administrative process contemplated by the order, and would impose a potentially immense burden on the federal court system. Because of these potential difficulties, a much more compelling demonstration of Presidential intent to allow a private right of action would be necessary in order for plaintiffs to prevail.

In their argument for a private right of action, plaintiffs have placed considerable reliance on three decisions. The first of these, *Stewart v. Travelers Corp.*, 503 F.2d 108 (9 Cir. 1974), is only inferentially relevant to this case because it did not involve an asserted private right of action under an executive order. The expansive language concerning the implication of a private right of action was *dicta* and, in any event, must now be viewed as modified by the Supreme Court decisions in *Cort, supra,* and *Securities Investor Protection Corp., supra. Stewart* can also be distinguished from the instant case on its facts. The statute there did not establish a comprehensive regulatory scheme; instead, it simply made certain acts unlawful. There, the implication of a private right of action was consistent with and necessary to the achievement of the underlying purposes of the statute.

Plaintiffs have also relied on several decisions in cases arising in this district. Before analyzing those reported decisions, the Court notes that a majority of decisions in this district have gone against the position urged by plaintiffs.[10] Plaintiffs' reliance on *Legal Aid Society of Alameda County v. Brennan, supra,* is simply misplaced. That case involved suit for mandamus to require the relevant officials to enforce the provisions of the executive order, not the claim of an individual seeking recovery for injuries allegedly suffered as a result of a contractor's noncompliance. The court specifically stated that the cases refusing to imply a private right of action were simply inapplicable (381 F. Supp. at 133), an unchallengable conclusion in view of the different policy considerations. In determining that a private right of action should be implied under Executive Order 11246, the court in *Lewis v. Western Air Lines*, 379 F. Supp. 684 (N.D.Cal.1974), did not have available to it the Supreme Court deci-

---

10. See, *e. g., Baer v. Standard Oil Company of California* (unpublished memorandum and order, C–71–2106–OJC, N.D.Cal., February 14, 1973), and *Lau v. Standard Oil Co.* (unpublished memorandum and order, C–72–434–WTS, N.D.Cal., October 26, 1972).

sions relied upon in this opinion.[11] Therefore, the Court respectfully declines to follow that decision.[12]

It is hereby ordered that defendant Safeway's motion for partial summary judgment on the Executive Order claim is granted.

11. Moreover, with all due respect this Court disagrees with the analysis of the court in *Lewis* of the relevancy of *Switchmen's Union v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), to the question of whether a private right of action arises under the executive orders. *Barlow v. Collins, supra,* 397 U.S. at 165–167, 90 S.Ct. 832, and *Association of Data Processing Service Organizations, Inc. v. Camp, supra,* 397 U.S. at 156–157, 90 S.Ct. 827, deal, *inter alia,* with the issue of the availability of judicial review of administrative action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Similarly, *Switchmen's Union* held judicial review of administrative action was not available under the common law, preceding adoption of the Administrative Procedure Act, where Congress expressly made the decision of the Mediation Board conclusive (*i. e.,* where Congress had committed agency action to agency discretion), 320 U.S. at 303–305, 64 S.Ct. 95. Resolution of these questions involve different considerations from those presently before the Court.

12. Assuming that Congress has not delegated to the President the discretion to create a private right of action under the executive order, there remain serious questions concerning the constitutionality of implying a private right of action under the order. The effect of such an implication would be to create a private right of action which the President may not be able to create by order. With a statute, of course, Congress could, if it so wished, create a private right of action. This may not be so with an executive order. Thus, although an executive order can be said to have the force and effect of law, there may be constitutional reasons for treating it differently from a statute when considering an asserted private right of action. However, in the instant case, because a private right of action is improper under the standards developed for statutes, it is unnecessary to consider the constitutional question.