Jessica DROUGHN, on behalf of herself and all others similarly situated

v.

FMC CORPORATION.

Civ. A. No. 75–3094.

United States District Court,
E. D. Pennsylvania.

June 21, 1977.

Helen H. Cutner, Philadelphia, Pa., for plaintiff.

Matthew J. Broderick, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff, Jessica Droughn, filed this employment discrimination action against her former employer, FMC Corporation, charging it with discrimination against her in her status as a woman and as a black person. The first count lays claim to relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., and the second count purports to state a claim under Executive Order No. 11246, as amended by Executive Order 11375. On a record consisting of the deposition of Ms. Droughn, the uncontradicted affidavits of seven FMC managerial employees, and the answers of FMC to some of plaintiff's interrogatories, plaintiff moves pursuant to Rule 23(b)(2) ·for the certification of a nationwide class of all black and female persons employed be-

tween September 12, 1966 and February 22, 1973, and applicants for employment since February 22, 1973. Plaintiff also moves for reconsideration, or in the alternative, for certification under 28 U.S.C. § 1292(b) of an interlocutory appeal of our earlier Order dismissing Count II for failure to state a claim. For the reasons that follow we deny both motions.

Jessica Droughn was employed by FMC from September 12, 1966 to December 17, 1973. During her tenure with the company she worked at all times at the Chemical Group Headquarters in Philadelphia in the Data Processing Section of the Management Information Services Department (MIS Department). The plaintiff was hired as a keypunch operator and was promoted successively to verifier and to maintenance control clerk, all within the same section and department. She complains in Count I that FMC discriminated against her in paying her a lower salary, in refusing her a promotion to the position of computer operator, and in dismissing her in December 1973 after a four-month medical leave of absence. All these practices, it is alleged, are the product of sex and race discrimination.

FMC is a diverse corporation that is divided into three distinct groups. It employs 48,000 persons in 32 states and 13 countries (Combe affidavit). The Corporate Group, which is the administrative arm of FMC, employs only 300 persons, most of them at corporate headquarters in Chicago. The largest division of FMC is the Machinery Group. That division employs 30,000 persons in 72 different facilities, and a majority of those employees engage in "labor intensive" production of such goods as petroleum and fluid control equipment, power transmission devices, and food and agricultural devices. About half of its employees are represented by labor unions, and employment policies are determined on a plant-by-plant basis (Holleran affidavit).

The Chemical Group, which engages in the manufacture of industrial chemicals and textiles, employs about 15,000 people in 69 locations. By reason of its history and the FMC corporate structure, the Chemical Group enjoys considerable autonomy. This division traces its roots to the American Viscose Corporation which was acquired by FMC in 1963. Following its acquisition by FMC, the employment policies of the American Viscose Division, later renamed the Chemical Group, underwent no radical changes. The division's employment policies have long been characterized by decentralization. For those employees of the Chemical Group who are subject to collective bargaining, FMC's employment practices are to a large extent molded by the give and take of labor negotiations. As to those employees who have no recognized bargaining agent, it is the practice of the Chemical Group to delegate to each facility the power to formulate personnel policies. In this manner, each plant can devise salary schedules adapted to the local labor market (Marx affidavit).

The Chemical Group Headquarters in Philadelphia, where plaintiff worked, houses 800 employees, none of whom are unionized. Of those 800, 525 are exempt from the provisions of the Fair Labor Standards Act (generally managerial employees) and the remainder are non-exempt, as was Ms. Droughn. There are 100 persons working in the MIS Department of whom 68 are exempt and 32 are non-exempt employees (Morrisey affidavit). The Chemical Headquarters is no exception to the company-wide pattern of decentralization in employment policy. According to one FMC employee who is familiar with these matters at the Philadelphia office:

> The American Viscose Division Headquarters had a rudimentary salary range/labor grade plan which pertained solely to non-exempt Headquarters' employees. The plan . . . functioned as a broad guideline for department supervisors. Who should be hired, how they should progress, if they should be promoted, and if they should be terminated were decisions made by the individual department managers. Decisions regarding whether an employee's absence from the department could not be tolerated

was decided [six] at the departmental level. (Louis Mark affidavit).

Ms. Droughn's departmental supervisor made all these decisions with respect to plaintiff in consultation with her immediate supervisor; no company-wide or even division-wide employment policies played a role in the essential decisions affecting the plaintiff (Bradshaw affidavit).

## I.

■ Before considering the legal arguments of the parties on the Rule 23 issue, one procedural matter must be addressed. As noted earlier, the record in this case consists of the deposition of the plaintiff, the uncontradicted affidavits of various FMC employees, and FMC's answers to some of plaintiff's interrogatories. FMC objected to many of plaintiff's class action discovery requests. Yet rather than avail herself of the procedures provided in the Federal Rules of Civil Procedure to compel discovery, plaintiff waited until discovery was closed and then filed a motion "for limitation of assertions of fact by defendant." The theory behind the motion was that FMC should not be permitted to assert facts with respect to subject matter as to which it resisted plaintiff's discovery inquiries. The motion will be denied. Plaintiff could have tested the validity of defendant's objections by a motion to compel discovery, and only following a Court order and subsequent resistance to discovery would relief of this nature be appropriate. That the record on which plaintiff bases her class certification motion is incomplete is no fault of the defendant.

## II.

Proceeding to the merits of the class certification motion, it is fundamental that the burden is on the plaintiff to affirmatively establish all the Rule 23(a) prerequisites. *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1 (E.D.Pa.1975). Plaintiff's complaint alleges generally that defendant discriminates against blacks and women in promotion (¶ 15 & 18), salary (¶ 16 & 17), and termination (¶ 26). She claims that these practices are symptomatic of a pervasive policy of employment discrimination (¶ 27 & 28). However, in neither her motion nor her complaint does she identify any particular company-wide employment policies. Instead, she relies on the often-cited principle that class action, across-the-board challenges to employment discrimination are favored under Title VII. *See, e. g., Rich v. Martin-Marietta*, 522 F.2d 333 (10th Cir. 1975); *see also Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3rd Cir. 1975). But the fact that claims of pervasive employment discrimination are susceptible of class action treatment under Title VII does not automatically entitle a plaintiff to the certification of the widest conceivable class. As with all other class certification motions, the evidence adduced by the parties in precertification proceedings must be measured against the prerequisites of Rule 23(a).

■ The major obstacle to plaintiff's attempt to certify a nationwide class is either the requirement that there exist questions of law or fact common to the class, Rule 23(a)(2), or the requirement that the claims of the named plaintiff be typical of the class she proposes to certify, Rule 23(a)(3). For purposes of this case, at least, the two prerequisites are interchangeable. The evidence establishes that FMC, consistent with its structurally diverse and geographically widespread organization, has adopted a decentralized approach to personnel practices. Not only is there no evidence of employment practices emanating from national corporate headquarters, but also there is nothing to suggest that the Chemical Group maintains a firm grip on employment policy within different segments of the division. According to the FMC affidavits, all decisions affecting employees are made at the departmental level. Jessica Droughn's own experience bears this out. She was hired for the Data Processing Section and twice promoted within that section. The position she unsuccessfully aspired to was in the MIS Department, her salary was fixed within the department, and she was terminated by the chief of her department. Fi-

nally, she never worked in another department, even within the Chemical Group Headquarters. Given these unquestioned facts, it can hardly be contended that there are questions of law and fact common to putative class members in the Machinery Group or in other departments within the Chemical Group; nor can it be maintained that the claims of Jessica Droughn are typical of women or blacks in other phases of the FMC enterprise. We conclude that no class above the level of the Management Services Department can be certified.

■ The second obstacle to certification of plaintiff's proposed class is the inclusion of both exempt and non-exempt employees in the plaintiff's class definition. Of the 100 employees in the MIS Department 68 are exempt and 32 are non-exempt. FMC takes the position that Jessica Droughn cannot adequately represent the 68 exempt employees, that her claims are typical of exempt employees and that no common questions are presented. One criterion for determining whether a class representative can adequately represent class members is the absence of interests antagonistic to the class. *Wetzel, supra* at 247. There is evidence in the record that exempt and non-exempt employees are treated very differently with respect to hiring, salary and promotions (Mark affidavit). Stemming from the differing personnel policies and the inherent strain in a supervisory relationship, FMC contends that Ms. Droughn cannot properly represent her superiors. Yet plaintiff identifies no evidence that would give us a fair assurance that a class that includes both managerial and clerical employees and whose sole named representative is a clerical employee is sufficiently homogeneous and free of conflicts to merit certification. We do not mean to suggest by the foregoing that a non-exempt employee can never represent an exempt employee. But, a plaintiff does not meet her burden of satisfying all the elements of Rule 23(a) by simply resting on the theory that the conflicts and varying proofs that stem from a class including both supervisors and their charges are illusory and the discrimination complained of is "across-the-board." *See Rodgers v. U. S. Steel,* 69 F.R.D. 382 (W.D.Pa.1975); *Piva v. Xerox Corp.,* 70 F.R.D. 378 (N.D.Cal.1975); *Knox v. Meatcutters,* 11 FEP 1327 (E.D.La.1975).

■ Finally, FMC challenges the adequacy of plaintiff's representation of both blacks and women in the MIS Department. FMC argues that a single class representative cannot adequately represent these two groups because of conflicting interests between them, and we agree. Certification of the two subclasses would place plaintiff in the unseemly position of claiming on the one hand that FMC employment policies discriminate in favor of men including black men and against women, and, on the other hand, that its personnel practices favor white persons, including white females, at the expense of black persons. A single litigant should not be asked to juggle these conflicting interests in an adversary system of justice. Furthermore, it is the nature of litigation that an attorney with several claims to relief is prone to press her stronger claim most vigorously, often to the practical exclusion of other claims which, though not without merit, seem less likely to yield favorable results. Where, as in class actions, a case pressed to its conclusion will result in a judgment on the merits as to both subclasses, the possibility that the claims of one or the other might be forever determined by less than a full effort on the part of the plaintiff is an unacceptable risk.

Plaintiff has met her burden under Rule 23(a)(2), (3) & (4), and she may represent either women or black persons who occupy non-exempt positions in the MIS Department at FMC if either subclass meets the Rule 23(a)(1) test of numerosity. Under that rule, a class may be certified if the class is so numerous that joinder of all class members is impracticable. FMC maintains that either the sixteen women or the thirteen blacks do not present insurmountable problems of joinder.

■ Although the question is a close one, joinder does not appear impracticable in this case. All of the putative class members worked at the Philadelphia office of

FMC's Chemical Headquarters. If they wish to litigate claims of employment discrimination similar to Jessica Droughn's they may move for joinder. This places no onerous burden on prospective plaintiffs and, if the joinder is sought at an early date no great prejudice will be inflicted on FMC.

### III.

■ Count II of plaintiff's complaint sought relief under Executive Order 11246, as amended by Executive Order 11375. By an earlier Order, we dismissed Count II for failure to state a claim upon which relief can be granted. Citing *Traylor v. Safeway Stores, Inc.*, 402 F.Supp. 871 (N.D.Cal.1975) and *Farmer v. Philadelphia Electric Co.*, 329 F.2d 3 (3rd Cir. 1964), we held that the Executive Order does not imply a private cause of action. Before us is plaintiff's motion for reconsideration and for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Plaintiff urges that in ruling that the Executive Orders created no private cause of action, we overlooked her theory that she is an intended beneficiary of the contracts between the Government and FMC. We now hold that whether the theory of an employee's cause of action under Executive Order 11246 be denominated an implied private right of action or a third party beneficiary cause of action, employees of government contractors have no cause of action for breach of the equal employment opportunity duties undertaken by the employer-contractor. The Order contemplates enforcement by the Government only. Further, we decline to certify an interlocutory appeal on the ground that such an appeal neither involves an issue about which there is substantial ground for a difference of opinion, nor will it materially aid in the termination of this litigation.