Peggy BRUG, Plaintiff,

v.

NATIONAL COALITION FOR THE HOMELESS, National Coalition for the Homeless Board of Directors, Mary Ann Gleason, Bill Faith, Anita Beaty, Gloria Marti, the United States, and the United States Department of Housing and Urban Development, Defendants.

No. CIV.A. 98–504 SSH.

United States District Court,
District of Columbia.

March 19, 1999.

Dana W. Johnson, McLemore & Johnson, Silver Spring, MD, for Plaintiff.

Assistant U.S. Atty. Stacy M. Ludwig, U.S. Attorney's Office, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on two motions to dismiss or, in the alternative, for summary judgment, one filed by the National Coalition for the Homeless ("NCH"), the NCH Board of Directors ("NCH Board"), Mary Ann Gleason, Bill Faith, Anita Beaty, and Gloria Marti (collectively "the NCH defendants"), and one filed by the United States and the United States Department of Housing and Urban Development ("HUD") (collectively "the federal defendants").[1] Upon consideration of the foregoing motions and the entire record, the Court grants the federal defendants' motion to dismiss or, in the alternative, for summary judgment, with respect to all but plaintiff's contract claims, on which the Court defers judgment pending plaintiff's decision to amend her complaint. The Court also grants in part and denies in part the NCH defendants' motion to dismiss or, in the alternative, for summary judgment. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 ...." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80

(D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## BACKGROUND

Plaintiff Peggy Brug, a black female, worked for the NCH from April 15, 1996, until May 22, 1997, as the Project Manager for Technical Assistance Services. She alleges that during her employment she was subjected to a racially hostile working environment and that, when she complained of the racial bias against her, she was fired in retaliation. Moreover, plaintiff alleges that her discharge violated the contract that existed between her and the NCH. Specifically, plaintiff alleges that defendant Gleason, the Executive Director of the NCH, made disparaging remarks about blacks, treated plaintiff differently from white employees in the areas of discipline, evaluation, and termination, and ultimately fired plaintiff for retaliatory reasons and without following the proper procedures.

Also named as defendants are HUD and the United States.[2] HUD allegedly funds and regulates the Technical Assistance Services Program ("TASP"). Plaintiff alleges that the HUD Agreement and the HUD Technical Assistance Delivery Plan ("TADP") controlled her employment with the NCH and, accordingly, that HUD and the United States are responsible for her hostile working environment and discriminatory discharge.

Moreover, plaintiff alleges that the NCH Board of Directors and defendants Faith, Beaty, and Marti tortiously breached the implied covenant of good faith and fair dealing by failing to evaluate Gleason's performance and by violating the impartiality and fairness provisions of the NCH grievance process. She further contends that all of the named defendants negligently failed to properly discharge their responsibilities related to her employment. Finally, plaintiff alleges that defendants

1. In response to the Court's Order of May 8, 1998, the federal defendants also filed a supplemental memorandum in support of their motion.

2. The United States was substituted as a defendant for Cynthia Hernan, pursuant to 28 U.S.C. § 2679(d).

Gleason and Faith intentionally released defamatory information about plaintiff's work and professional capabilities.

## STANDARD OF REVIEW

A motion to dismiss should not be granted "unless plaintiff[ ] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint is construed liberally in the plaintiff's favor, and plaintiff is given the benefit of all inferences that can be derived from the facts alleged. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997); *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334–35 (D.C.Cir.1985). "However, the court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.

In the event matters outside the pleadings are presented to and not excluded by the court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(b); *Americable Int'l Inc. v. Department of the Navy*, 129 F.3d 1271, 1274 n. 5 (D.C.Cir.1997); *Tele–Communications*, 757 F.2d at 1334. Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be

considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### I. *Title VII*

Plaintiff first alleges that she was subjected to a racially hostile work environment and terminated from her position at the NCH due to her race in violation of Title VII. Compl. ¶¶ 1, 13–23.

#### 1. Federal Defendants

■ The federal defendants move to dismiss or, in the alternative, for summary judgment on plaintiff's Title VII claim against them, on the ground that she was not a federal employee.[3] According to the Court of Appeals:

> Title VII cover[s] only those individuals in a direct employment relationship with a government employer. Individuals who are independent contractors or those not directly employed by such an employer are unprotected. Status as an employee is therefore of crucial significance for those seeking to redress alleged discriminatory actions in federal employment.

*Spirides v. Reinhardt*, 613 F.2d 826, 829–830 (D.C.Cir.1979) (footnotes omitted); *see also* 42 U.S.C. § 2000e–16; *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir.1985)

---

3. Both parties have presented matters outside the pleadings, and the Court concludes that it is fair to treat the federal defendants' motion with respect to plaintiff's Title VII claim as a motion for summary judgment. *See* Fed. R.Civ.P. 12(b); *Americable*, 129 F.3d at 1274 n. 5.

(observing that "inasmuch as 42 U.S.C. § 2000e–16 is a waiver of sovereign immunity, its coverage ought to be strictly construed to limit remedies to persons who are clearly under the control of the federal government"); *King v. Dalton*, 895 F.Supp. 831, 836 (E.D.Va.1995). In order to determine whether an individual had a sufficiently direct employment relationship with the federal government to trigger Title VII's protection, the Court must consider all of the circumstances surrounding the work relationship. *Spirides*, 613 F.2d at 831. The most important factor is the federal government's right to control plaintiff's work. *Id.; King*, 895 F.Supp. at 838. That factor, however, is not dispositive; other relevant factors include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated . . . ; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "em-

ployer" pays social security taxes; and (11) the intention of the parties.

*Spirides*, 613 F.2d at 832; *see also King*, 895 F.Supp. at 838 & n. 9 (noting that, although the *Spirides* factors were developed in a context where there was only one possible employer, it also provides the proper framework for analyzing the status of a putative co-employer).

▪ Based on the *Spirides* factors, the Court concludes that, as a matter of law, plaintiff cannot establish that she was a federal employee.[4] The NCH paid plaintiff's salary, and plaintiff's insurance, retirement benefits, and sick and annual leave were governed by NCH policies.[5] *See* Supplemental Declaration of Cynthia Hernan ¶¶ 6–7 [hereinafter "Hernan II Decl."]; Affidavit of Peggy Brug ¶ 9 (acknowledging that "NCH issued my paychecks"); *see also id.* ¶ 4 (acknowledging that the NCH Personnel Manual, along with the HUD agreement, established her employment agreement); *id.* Ex. A. (NCH Personnel Manual, which provides at p. 5 that "[a]ll permanent employees will be covered by NCH . . . with Social Security, unemployment insurance and workmen's compensation," and explains the leave policies at pp. 6–8). The NCH also regulated the grievance and resignation procedures applicable to plaintiff's employment. *See* Brug Aff. Ex. A. Plaintiff's direct supervisor was Gleason, an NCH employee, and plaintiff worked at the NCH office. *Id.* ¶¶ 5 & 9. HUD did not have the authority to hire or fire plaintiff under the HUD Agreement.[6] *See* Decla-

---

**4.** Plaintiff has taken inconsistent positions during this litigation as to whether or not she was a federal employee. Plaintiff appears to concede that she was not a federal employee in one of her pleadings, despite her claims to the contrary in her affidavit. *See* Plaintiff's Response to Federal Defs.' Supp. Memo. in Support of Mot. To Dis. or for S.J., at 3–5. The Court has not, however, relied on this apparent concession in evaluating plaintiff's employment status.

**5.** Plaintiff claims that "HUD paid my salary and employment benefits," Brug Aff. ¶ 7(a); however, the context of the affidavit indicates that this is not a statement of fact but rather

an erroneous legal conclusion based on the fact that plaintiff was paid by the NCH out of HUD grant money. Accordingly, the Court disregards this statement. *See Garrett Biblical Institute v. American University*, 163 F.2d 265, 266 (D.C.Cir.1947); *United States v. BCCI Holdings; S.A.*, 977 F.Supp. 1, 6 (D.D.C. 1997) ("[L]egal conclusions 'cloaked' as facts are not sufficient to create a genuine issue of material fact.").

**6.** Plaintiff states that HUD had the authority to hire and fire her, basing her conclusion on the Key Personnel stipulation in the HUD Agreement. Brug Aff. ¶ 5. That section provides that "key personnel *specified in the*

ration of Cynthia Hernan [hereinafter "Hernan I Decl."] Ex. A (the HUD Agreement); *see also id.* ¶¶ 6–8 (confirming that HUD did not have any input into the decision to hire or fire plaintiff).[7]

■ Nor has plaintiff proffered sufficient evidence to create a genuine issue of material fact with respect to the most important factor in the *Spirides* analysis: the control that the federal defendants had over plaintiff's work product. Defendants proffer evidence that, although Hernan "had work meetings" with plaintiff, no one at HUD assumed a supervisory role over her work product. Hernan I Decl. ¶ 7. In rebuttal, plaintiff claims that Hernan "directed, critiqued, defined and approved every *major* aspect of my work." Brug Aff. ¶ 7 (emphasis added). Although the Court acknowledges that, on a motion for summary judgment, conflicting evidence must be viewed in the light most favorable to the nonmoving party, the Court concludes that the evidence proffered by plaintiff is simply not sufficient to create a genuine issue as to control. Plaintiff did not list specific facts in support of her sweeping claim that Hernan directed and controlled every aspect of her work. One court, presented with similar evidence, observed:

> Without greater specificity regarding the details of their working relationship, [statements similar to plaintiff's] . . . are inconclusive with respect to whether [the federal defendants] controlled the means and manner of her work. In the typical client-contractor relationship, the client will "review" the work performed by the contractor to determine whether it meets [its] expectations. In addition, while suggestive of control, . . . [a] statement that [a federal employee] "supervised" her work is also somewhat ambiguous. Presumably, any large government contract will be supervised to some extent by the relevant government agency. Yet, the word "employee" in § 2000e–16 clearly does not encompass every government contractor.

*King*, 895 F.Supp. at 838–839 n. 10.

The Court notes, however, that even if plaintiff had provided specific evidence of control, the uncontroverted evidence on the record supports the conclusion that plaintiff was not a federal employee. A comparison to *King*, in which the court applied the *Spirides* test to a similar factual situation, is useful. The plaintiff in *King* was an employee of a government contractor who had worked on a project for the Navy and claimed that the Navy was her "employer" for Title VII purposes. The *King* court granted summary judgment against the plaintiff despite the fact that a genuine issue of material fact existed as to a particular Navy employee's control over the plaintiff. Although the court noted that the Navy employee in charge of the project worked closely with plaintiff, played an active and integral role in overseeing the project, and may have even requested that plaintiff be removed from the project, the court nonetheless found

---

*HUD–1044 Continuation Sheet, if any,* are considered to be essential to the work to be performed under this award. . . . [therefore] prior to diverting any of specified the [sic] individuals to other work, you [NCH] shall notify your Grant/Cooperative Agreement Officer reasonably in advance to permit the Grant/Cooperative Agreement Officer to approve your request." (emphasis added). However, although plaintiff concludes that "[a]s the Project Manager for the TASP, I was its key personnel," Brug Aff. ¶ 5, a review of the HUD Agreement shows that the HUD–1044 Continuation Sheet for the NCH grant does not specify Brug or any other person as "key personnel" at the NCH.

7. While not based on her personal knowledge, plaintiff appears to challenge Hernan's claim that HUD did not have any input into the decision to fire her. Plaintiff's affidavit alludes to a statement allegedly made by defendant Gleason that "Ms. Hernan directed [plaintiff's] termination because of poor performance." Brug Aff. ¶ 5. While this statement indicates a potentially genuine issue as to whether or not Hernan recommended Brug's termination, it does not relate to a material fact. Regardless of whether Hernan recommended her termination, it is clear from the record that only the NCH, and not HUD, had the actual authority to terminate plaintiff's employment.

that "the totality of the circumstances, as reflected in the record evidence, nonetheless points persuasively to the conclusion that the Navy was not [plaintiff's] employer." 895 F.Supp. at 840–43; *see also Mares,* 777 F.2d at 1069 ("The mere fact that [grocery] baggers must comply with certain Army regulations [affecting dress and conduct] is not enough to make them employees of the Army"). Similarly, the Court finds that the totality of the circumstances in this case, including the other relevant *Spirides* factors already discussed, strongly supports the conclusion that HUD "has not so transcended the bounds of [the grantor-grantee] relationship as to become [plaintiff's] employer." *King,* 895 F.Supp. at 842. Accordingly, the Court concludes that plaintiff has not proffered sufficient evidence to survive summary judgment on the issue of whether she was a federal employee, and thus grants summary judgment to the federal defendants on plaintiff's Title VII claims.

## 2. The NCH Defendants

■ The NCH defendants contend that plaintiff has failed to state a claim under Title VII against the NCH and its Board of Directors because the NCH does not meet the statutory definition of an employer, i.e., it does not employ fifteen or more employees.[8] *See* 42 U.S.C. § 2000e(b). Plaintiff contends that NCH and HUD employees should be aggregated for the purpose of determining whether the NCH is subject to the requirements of Title VII.

An entity must qualify as an "employer" in order to fall under Title VII. Title VII defines an "employer" as an entity that has "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). In order to ensure that employers do not circumvent the strictures of Title VII through clever legal maneuvering, in certain cases the employees of two legally distinct entities may be aggregated to meet the fifteen employee requirement. *See Hall v. Delaware Council on Crime and Justice,* 780 F.Supp. 241, 241 (D.Del.), *aff'd,* 975 F.2d 1549 (3d Cir.1992) ("The obvious purpose of viewing two commercial corporations as a single employer for Title VII purposes is to preserve the remedial goals of the statute and disallow intentional exclusion from the statute by the deceptive creation of two separate entities."); *see also St. Francis Xavier,* 117 F.3d at 625 (holding that employees may be aggregated if plaintiff can show that two distinct entities have: (1) an interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control (citing *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965))).

Plaintiff contends that dismissal of her Title VII claim against the NCH is inappropriate because of the factual nature of the "joint employer" test. The Court, however, concludes that the *Radio and Television Broadcast* factors are not applicable to this case because Title VII prohibits the aggregation of private and federal employees in order to meet the definition of an employer under Title VII as a matter of law. An "employee" is defined in Title VII as "an individual employed by an employer." 42 U.S.C. § 2000e(f). That same section of Title VII, however, expressly excludes "the United States [and] ... corporation[s] wholly owned by the Government of the United States" from the definition of an "employer."[9] *Id.* at

---

8. Defendants also contend that plaintiff cannot state a claim against the individual defendants because there is no personal liability under Title VII. Plaintiff did not contest this argument, and thus the Court grants the NCH defendants' motion to dismiss plaintiff's Title VII claim against the individual defendants.

*See Gary v. Long,* 59 F.3d 1391, 1398–99 (D.C.Cir.1995).

9. As originally enacted, Title VII did not extend to discrimination in the federal workplace because of the exclusion of the federal government from the definition of an employ-

§ 2000e(b)(1); *see also Walls v. Mississippi State Dep't of Public Welfare*, 730 F.2d 306, 323 (5th Cir.1984) (refusing to order the United States to pay an award of back pay because back pay is only " 'payable by the employer', § 706, 42 U.S.C. § 2000e–5(g), [and] the United States is explicitly excluded from the Title VII definition of an employer."); *Hill v. Berkman*, 635 F.Supp. 1228, 1233 (E.D.N.Y.1986) ("The United States is not an 'employer' for purposes of [Title VII].... [s]imilarly, a federal agency is an 'executive agency' under § 2000e–16(a) and not an 'employer' under § 2000e(b)."). It follows that federal employees cannot be counted to satisfy the definition of a Title VII "employer" because they are not "individual[s] employed by an *employer.*" (emphasis added). *See also Hill*, 635 F.Supp. at 1233 ("The provisions of Title VII that deal with 'employers' and 'employees' apply only to non-federal workers."). Accordingly, because plaintiff's complaint does not allege that the NCH had at least fifteen employees for the relevant time period, the Court dismisses plaintiff's Title VII claim against the NCH.[10]

## II. Section 1985(3)

■ Section 1985(3) prohibits conspiracies to deprive any person of the equal protection of the law. 42 U.S.C. § 1985(3). The Court dismisses plaintiff's § 1985(3) claim against the federal defendants because it is barred by the doctrine of sovereign immunity. *See Hohri v. United States*, 782 F.2d 227, 245 n. 43 (D.C.Cir. 1986) (holding that § 1985, by its terms, does not apply to actions against the United States), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); *Graves v. United States*, 961 F.Supp. 314, 318 (D.D.C.1997).

■ The NCH defendants argue for dismissal on the ground that plaintiff has failed to allege any facts that would constitute a conspiracy as a matter of law. The Court agrees. A plaintiff suing under § 1985(3) must allege: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of privileges and immunities under the law; (3) motivated by some class-based, invidiously discriminatory animus; (4) whereby a person is either injured in his person or property, or is deprived of any right or privilege of a citizen of the United States. *Graves*, 961 F.Supp. at 320. A conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act ... the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." *Id.* at 314 (quoting *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir.1983)) (internal quotation marks omitted).

■ Plaintiff's complaint fails to allege that there was ever any agreement or "meeting of the minds" between any of the NCH defendants and HUD, an essential element of a conspiracy claim. *See id.* At most, the complaint alleges that HUD failed to supervise the NCH defendants properly. *See* Compl. ¶¶ 12 & 45–46. Plaintiff's conclusion that HUD "aided and abetted in the commission of [the acts of discrimination]" is not sufficient to sustain

---

er. *See* 42 U.S.C. § 2000e(b); *Spirides*, 613 F.2d at 828; *King*, 895 F.Supp. at 835. In 1972, Congress amended Title VII to forbid discrimination in federal government employment decisions and permit federal employees to sue the federal government in discrimination cases. *See* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261 § 717, 86 Stat. 211 (codified at 42 U.S.C. § 2000e–16). Significantly, "rather than simply adding the United States to the universe of possible 'employers' that may be sued under § 2000e–2, Congress created a separate and distinct provision to govern federal workplace discrimination." *King*, 895 F.Supp. at 836 (citing § 2000e–16); *see also Hill v. Berkman*, 635 F.Supp. 1228, 1233 (E.D.N.Y.1986).

10. The Court also dismisses plaintiff's 42 U.S.C. § 1981a claims against all of the defendants because, as previously discussed, plaintiff has not stated a claim under Title VII with respect to any of them. *See* 42 U.S.C. § 1981a(a)(1).

a claim of conspiracy under § 1985(3). *See Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir. 1984) ("Complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy ... will be dismissed.... Diffuse and expansive allegations are insufficient.") (quoting *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977)) (internal brackets omitted). Accordingly, the NCH defendants' motion to dismiss plaintiff's § 1985(3) claim is granted; but this claim is dismissed without prejudice.

## III. Executive Order 11,246

■ Executive Order 11,246 provides that "all Government contracting agencies shall include in every Government contract hereafter entered into the following provisions: ... (1) The contractor will not discriminate against any employee ... because of race, creed, color, or national origin."[11] Exec. Order No. 11,246, § 202, 30 Fed.Reg. 12,319 (1965). The NCH defendants contend that Executive Order 11,246 does not provide for a private right of action. Plaintiff contends that the Court should recognize a private right of action under Executive Order 11,246 or, in the alternative, that plaintiff is entitled to relief under the Order based on a third-party beneficiary theory.

11. The Executive Order clearly does not encompass activity by the federal government, and therefore the Court dismisses any claim under the Executive Order against the federal defendants. Moreover, Title VII is the exclusive remedy for any federal employment discrimination claim. *See Brown v. General Services Admin.*, 425 U.S. 820, 829–835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Graves*, 961 F.Supp. at 322.

12. Moreover, even were the Court to hold that in certain situations a plaintiff may be able to enforce Executive Order 11,246 as a third-party beneficiary to a government contract, this is not such a situation. Under District of Columbia law, a third party may sue on a contract only if the contracting parties intended the third party to benefit. *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C.1990). Third-party beneficiaries of a government contract are assumed to be merely incidental beneficiaries, and may not

The Court rejects plaintiff's contention that a private right of action exists under Executive Order 11,246. *See Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750 (D.C.Cir.1990); *Utley v. Varian Assocs.*, 811 F.2d 1279, 1285–86 & n. 4 (9th Cir.1987). Moreover, plaintiff cannot circumvent this conclusion by arguing that she is a third-party beneficiary to the contract between HUD and the NCH (which presumably includes the anti-discrimination language mandated by Executive Order 11,246). *See Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1532 (M.D.Fla.1991) ("The third-party beneficiary theory is merely derivative of the private cause of action theory and the former cannot be entertained given the disposition of the latter."). It would "be obviously destructive of the administrative scheme [explained in detail in Executive Order 11,246] to allow it to be short-circuited" through state third-party beneficiary law.[12] *Traylor v. Safeway Stores, Inc.*, 402 F.Supp. 871, 876 (N.D.Cal.1975) (discussing the detailed administrative remedies available in Executive Order 11,246); *see also Farkas v. Texas Instrument, Inc.*, 375 F.2d 629, 633 (5th Cir.1967) (refusing to imply a private right of action or allow a third-party beneficiary claim based on Executive Order 10,925, the predecessor to

enforce the contract absent a clear intent to the contrary. *See Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C.Cir.1993) (consent decree); *Sealift Bulkers, Inc. v. Republic of Armenia*, 1996 WL 901091 at *4 (D.D.C. 1996). Even read in a light most favorable to plaintiff, the complaint alleges no more than that the generic anti-discrimination language mandated by Executive Order 11,246 was included in the HUD Agreement. *See* Compl. ¶ 10. Even those courts willing to hold that parties may enforce Executive Order 11,246 through third-party beneficiary law usually limit their holdings to cases in which the anti-discrimination provisions included in the contract were clearly intended to benefit the plaintiff specifically. *See, e.g., Eatmon v. Bristol Steel & Iron Works, Inc.*, 769 F.2d 1503, 1515 & n. 4 (11th Cir.1985); *Terry v. Northrop Worldwide Aircraft Servs., Inc.*, 628 F.Supp. 212, 217 (M.D.Ala.1980), *vacated on other grounds*, 786 F.2d 1558 (11th Cir.1986).

Executive Order 11,246); *Robinson,* 760 F.Supp. at 1532; *Droughn v. FMC Corp.,* 74 F.R.D. 639, 644 (E.D.Pa.1977). Thus, the NCH defendants' motion to dismiss plaintiff's claim based on Executive Order 11,246 is granted.

## IV. *Section 1983, Fifth, and Fourteenth Amendment Claims*

Plaintiff contends that the allegedly racially discriminatory action taken against her by the NCH defendants and the federal defendants also violates 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments.

### 1. Federal Defendants

■ The federal defendants contend that the Court should dismiss plaintiff's claims against them under this statute and the Constitution because Title VII provides "the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. General Services Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The Court agrees. Although *Brown* dealt with a § 1981 claim, courts have since extended the *Brown* reasoning to reject litigants' efforts to initiate discrimination claims against the federal government under the Constitution or statutes other than Title VII.[13] *See, e.g., Great American Federal Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372–78, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (rejecting attempt to assert a violation of Title VII through § 1985(3)); *Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1415 (D.C.Cir.1985) (holding that federal employees may not bring suit under the Constitution for employment discrimination). Thus, the Court dismisses plaintiff's § 1983, Fifth Amendment

and Fourteenth Amendment claims with respect to the federal defendants.

### 2. The NCH Defendants

■ The Court also dismisses plaintiff's § 1983 and Fourteenth Amendment claims against the NCH defendants. The basis for these claims is the alleged relationship between HUD, an agency of the federal government, and the NCH. Because there is no mention in plaintiff's complaint of any state influence on the activities which allegedly took place, plaintiff has not stated a claim under either § 1983 or the Fourteenth Amendment. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 542 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (noting that the Fourteenth Amendment applies to actions by states, not the federal government); *Risley v. Hawk,* 918 F.Supp. 18, 21 (D.D.C. 1996) (holding that a § 1983 claim cannot be based on federal activity), *aff'd,* 108 F.3d 1396 (D.C.Cir.1997).

An action for damages under the Fifth Amendment pursuant to the principles set forth in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), may only be brought against one who is engaged in "state" action.[14] *See Reuber v. United States,* 750 F.2d 1039, 1054 (D.C.Cir.1984). The core issue is whether the NCH defendants' alleged wrongdoing is fairly attributable to the federal government. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). There is no clear formula for determining what situations transform otherwise private actors into state actors for the purposes of constitu-

---

**13.** Moreover, it is clear that plaintiffs cannot state a claim under § 1983, *see Hohri,* 782 F.2d at 245 n. 43, or the Fourteenth Amendment, *see San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 542 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987), against the federal government.

**14.** The Court notes that federal, rather than state, action must be alleged in order to sustain the complaint; however, cases usually call both types of governmental action "state action," so the Court will use the term here to denote federal governmental action. *See Reuber v. United States,* 750 F.2d 1039, 1054 n. 19 (D.C.Cir.1984).

tional analysis. *See Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (O'Connor, J., dissenting) ("Our cases deciding when private action might be deemed that of the state have not been a model of consistency."). Regardless of the test or factors used, it is well-settled that the existence of state action is a highly fact-based inquiry. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Reuber, .750* F.2d at 1055.

 In this case, plaintiff appears to be making a type of "state compulsion" or "nexus" argument, asserting that the extensive regulation of the TASP program by HUD and the fact that HUD funds the program means that actions taken by the NCH defendants should be attributed to the federal government.[15] *See Rendell-Baker*, 457 U.S. at 839–843, 102 S.Ct. 2764; *Blum v. Yaretsky*, 457 U.S. 991, 1003–1012, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Relevant factors include the extent to which the government funds and regulates the private entity, as well as any other evidence that the state has "compelled" the particular conduct at issue. Although the mere fact that the government regulates and funds a private entity does not mean that there is state action, *see Blum*, 457 U.S. at 1004, 102 S.Ct. 2777, in light of the factual nature of the state action inquiry the Court cannot grant the NCH defendants' motion to dismiss plaintiff's Fifth Amendment claim against them.

**15.** The Court notes that plaintiff, in her response, terms her state action argument a "symbiotic relationship." However, she does . not explain in any detail her understanding of such a test, absent the generic observation that private conduct may become so entwined with governmental policies that it may be regarded as state action. In light of the confusion in the case law regarding the actual components of the "tests" that the Supreme Court has applied over the years, the Court will not, as the NCH defendants suggest, hold that plaintiff has conceded that state action

## V. Contract Claims

Plaintiff's complaint contains two contract claims—breach of contract and breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 24–39. She seeks an unspecified amount of damages for these alleged breaches, "including but not limited to health insurance, life insurance, unemployment, social security, vacation, pension and annual raises." *See id.* at p. 18.

### A. Federal Defendants

The federal defendants contend that plaintiff's contract claims against them should be dismissed because exclusive jurisdiction for these claims rests in the Court of Federal Claims.[16] It is well-settled that district courts have jurisdiction over contract claims against the federal government only if the amount in controversy does not exceed $10,000. *See* 28 U.S.C. § 1346(a)(2) & 1491; *Goble v. Marsh*, 684 F.2d 12, 15 (D.C.Cir.1982); *American Airlines, Inc. v. Austin*, 778 F.Supp. 72, 75 (D.D.C.1991). Plaintiff's damage request appears to exceed this $10,000 threshold. Plaintiff's contract claims may, however, remain in this Court if plaintiff amends her complaint to waive any contract claims in excess of $10,000 against the federal government. *See Goble*, 684 F.2d at 15. Accordingly, the Court grants plaintiff 21 days to amend her complaint on this subject. Should plaintiff fail to amend, the Court will dismiss both contract claims against the federal defendants.[17]

does not exist under any of the other relevant tests.

**16.** Plaintiff did not address this jurisdictional argument in her opposition.

**17.** The Court does not address the federal defendants' contention that plaintiff has failed to state a claim for breach of contract. The federal defendants are free to raise this objection again in the event that plaintiff decides to amend her complaint to eliminate the existing jurisdictional defect.

## B. The NCH Defendants·

The NCH defendants do not address Count II of plaintiff's complaint, her breach of contract allegations. But they contend that Count III, alleging that defendants breached an implied covenant of good faith and fair dealing when they discharged plaintiff, fails to state a claim because plaintiff's complaint does not allege that she was anything but an at-will employee and "District of Columbia law does not recognize a claim for breach of an implied covenant of good faith and fair dealing when brought by an at-will employee." *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 627 (D.C.1997) (quoting *Gomez v. Trustees of Harvard Univ.,* 676 F.Supp. 13, 15 (D.D.C.1987)).

District of Columbia law presumes that the mutual promise to employ and serve creates a contract terminable "at will" by either party. *Bell v. Ivory,* 966 F.Supp. 23, 29 (D.D.C.1997), *aff'd,* 159 F.3d 635 (D.C.Cir.1998). This presumption can be overcome if plaintiff establishes that the contract of employment was for a fixed term or that it was an indefinite contract that allowed termination only for cause. *See id.; Dale v. Thomason,* 962 F.Supp. 181, 183 (D.D.C.1997). The NCH contends that plaintiff has not alleged sufficient facts to overcome the "at will" presumption. The Court disagrees. Plaintiff alleges that "the HUD grant, the renewal of the grant and NCH's good faith efforts to secure additional funding for the TASP would define the duration of Plaintiff's employment as long as Plaintiff carried out her duties in a competent manner," and that "NCH's progressive disciplinary procedures ... and compliance with the HUD Agreement established the sole methodology by which to discharge Plaintiff." Compl. ¶ 29. Thus, because plaintiff has alleged sufficient facts to raise a genuine issue as to her employment status, dismissal of Count III is inappropriate at this time.

## VI. *Tort Claims Against the Federal Defendants*

Plaintiff's fifth claim appears to allege that the federal defendants were negligent by failing to "properly discharge their duties; in that, no control or supervision was exercised over Defendant Gleason." Compl. ¶ 46. The United States has waived its sovereign immunity to a limited extent under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671–2680. However, absent full compliance with the conditions placed on the waiver of sovereign immunity, the Court lacks jurisdiction to entertain a tort claim against the United States. *GAF Corp. v. United States,* 818 F.2d 901, 904 & n. 6 (D.C.Cir. 1987). One such condition is that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a); *GAF,* 818 F.2d at 904. The record does not indicate that plaintiff filed an administrative tort claim, nor does the complaint allege that she did so.[18] *See Hatcher–Capers v. Haley,* 762 F.Supp. 393, 396 (D.D.C.1991); *see also* Declaration of Allen E. Hope ¶ 7. Thus, the Court finds that it does not have jurisdiction over this claim, and dismisses plaintiff's tort claim against the federal defendants without prejudice.

## VII. *Negligence Claims Against Defendants Faith, Beaty, and Marti*

. Finally, the NCH defendants request that the Court grant summary judgment in favor of defendants Faith, Beaty, and Marti on plaintiff's negligence claims because they are immune from civil liability under D.C.Code § 29–599.15. That section

---

18. Although plaintiff, in her pleadings, claims that she "attempted to exhaust administrative procedures and pursue an administrative tort claim, but, HUD frustrated her every attempt," *see* Pl.'s Opp. to Defs.' Mot. To Dis. or S.J., at 8, the portion of plaintiff's affidavit cited as authority for this proposition states only that plaintiff tried to file an EEO complaint with HUD. *See* Brug Aff. ¶ 9.

provides that "[a]ny person who serves as a volunteer of [a non-profit] corporation shall be immune from civil liability except where the injury or damage was a result of: (1) The willful misconduct of the volunteer;" D.C.Code § 29–599.15(b). In addition, the non-profit corporation must maintain liability insurance with a limit of coverage of not less than $200,000 per individual claim and $500,000 per total claims that arise from the same occurrence. *Id.* § 29–599.15(c).

The NCH defendants request that the Court treat this portion of their motion as a motion for summary judgment, *see* Fed. R.Civ.P. 12(b), and attached to their motion and reply copies of the insurance policies that were in effect during plaintiff's employment. The NCH defendants did not, however, proffer any affidavits or other evidence to confirm that defendants Faith, Beaty, and Marti were volunteers. Although the NCH defendants contend in their motion that "[plaintiff's] reference in the Complaint to the payment of salaries to employees and silence with respect to payments to NCH Board members fairly may be read as an acknowledgment that the NCH Board members serve as unpaid volunteers," NCH Defs.' Mot. To Dis. or for S.J., at 9, the Court cannot agree that such an analytical leap is warranted. Accordingly, because the Court does not have before it sufficient information to properly evaluate a motion for summary judgment on the negligence claims against defendants Faith, Beaty, and Marti, the NCH defendants' motion on that issue is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants in large part the federal defendants' motion to dismiss or, in the alternative, for summary judgment, but defers judgment on plaintiff's contract claims against the federal defendants pending a possible amendment of plaintiff's complaint; and (2) grants in part and denies in part the NCH defendants' motion to dismiss or, in the alternative, for summary judgment. An appropriate Order accompanies this Opinion.

## *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the motion to dismiss or, in the alternative, for summary judgment filed by the United States and the Department of Housing and Urban Development (collectively, "the federal defendants") is granted with respect to all of plaintiff's claims except her contract claims. It hereby further is

ORDERED, that plaintiff's tort claim against the federal defendants is dismissed without prejudice. It hereby further is

ORDERED, that the Court defers its decision on the federal defendants' motion to dismiss plaintiff's contract claims. The Court grants plaintiff 21 days from the date of this Order within which to amend her complaint to cure the jurisdictional defect discussed in the accompanying Opinion. Should plaintiff fail to cure the defect within this time period, the Court will grant the federal defendants' motion to dismiss these claims. It hereby further is

ORDERED, that the motion to dismiss or, in the alternative, for summary judgment filed by the National Coalition for the Homeless ("NCH"), the NCH Board of Directors ("NCH Board"), Mary Ann Gleason, Bill Faith, Anita Beaty, and Gloria Marti (collectively "the NCH defendants"), is granted in part and denied in part. It hereby further is

ORDERED, that the NCH defendants' motion to dismiss plaintiff's Title VII and 42 U.S.C. § 1981a claims is granted. It hereby further is

ORDERED, that the NCH defendants' motion to dismiss plaintiff's 42 U.S.C. § 1985(3) claim is granted, and plaintiff's § 1985(3) claim is dismissed without prejudice. It hereby further is

ORDERED, that the NCH defendants' motion to dismiss plaintiff's claims based on Executive Order 11,246, 42 U.S.C. § 1983, and the Fourteenth Amendment is granted. It hereby further is

ORDERED, that the NCH defendants' motion to dismiss plaintiff's Fifth Amendment claim is denied. It hereby further is

ORDERED, that the NCH defendants' motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing is denied. It hereby further is

ORDERED, that the NCH defendants' motion for summary judgment on the negligence claims against defendants Faith, Beaty, and Marti is denied without prejudice.

SO ORDERED.